UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| DOLLY LOTT, an individual; BRANDI MERRELL, an individual; SANJAY & SHAROJ PATEL, individuals; TROYCE & RHONDA PRUITT, individuals; and, DWAYNE & DOLLY PUNCH, individuals;<br><br>*Plaintiffs*,<br><br>v.<br><br>TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; and, TAI'AN TAISHAN PLASTERBOARD CO., LTD.,<br><br>*Defendants*. | Case No. 1:17-cv-00217-LG-RPM |

## AMENDED COMPLAINT

Plaintiffs allege that the Defendants' defective drywall products have been found in their Mississippi homes. Each Plaintiff properly executed an exclusion form, opting-out of a nationwide class action settlement with the Defendants named herein and have chosen to pursue their individual claims. Pursuant to Fed.R.Civ.P.20, Plaintiffs have permissively joined as parties in this action against these Defendants because their claims arise from a common series of actions or occurrences. The Defendants in this action are liable for damages incurred by Plaintiffs due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing inspecting, installing, or sale of the defective drywall at issue in the litigation.

## JURISDICTION, VENUE, AND PARTIES

1. This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. §1332(a)(2) as the amount in controversy for each Plaintiff exceeds $75,000.00. Plaintiffs are owners of real property in Mississippi and all Defendants are foreign business entities; thus, complete diversity exists.

2. This Court has supplemental jurisdiction over under 28 U.S.C. §1367 as all Defendants are subject to the Mississippi Long-Arm Statute, Miss. Code Ann. §13-3-57 for the tortious conduct described herein.

3. Venue in this district satisfies the requirements of 28 U.S.C. § 1391(b) and (c) because some Plaintiffs reside in this jurisdiction and a substantial amount of the events and occurrences giving rise to the claim occurred in this district, or a substantial part of the property that is the subject of this action is situated in this district.

4. Plaintiff, Dolly Lott, is a citizen of Mississippi and owns real property located at 2607 Nina Drive, Picayune, Mississippi 39466. Plaintiff is bringing claims against the manufacturing defendants as set forth in the following paragraphs of this Complaint.

5. Plaintiff, Brandy Merrell, is a citizen of Mississippi and owns real property located at 19067 Fenton-Dedaux Road, Kiln, Mississippi 39556. Plaintiff is bringing claims against the manufacturing defendants as set forth in the following paragraphs of this Complaint.

6. Plaintiffs, Sanjay & Sharoj Patel, are citizens of Georgia and own real property located at 12 Oak Alley Lane, Long Beach, Mississippi 39560. Plaintiffs are bringing claims against the manufacturing defendants as set forth in the following paragraphs of this Complaint.

7. Plaintiffs, Troyce & Rhonda Pruitt, are citizens of Mississippi and own real property located at 12 Gulfview Drive, Ocean Springs, Mississippi 39564. Plaintiffs are bringing

claims against the manufacturing defendants as set forth in the following paragraphs of this Complaint.

8. Plaintiffs, Dwayne & Dolly Punch, are citizens of Mississippi and own real property located at 208 Sandy Street, Waveland, Mississippi 39576. Plaintiffs are bringing claims against the manufacturing defendants as set forth in the following paragraphs of this Complaint.

9. Defendant, Taishan Gypsum Company, Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. (hereinafter "Taishan") is a foreign corporation doing business in several States, including but not limited to, Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas and Virginia. Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including the State of Mississippi. Upon information and belief, Defendant has continuously conducted business with businesses with purchasers within the United States which has resulted in defective drywall being systematically distributed and sold in the United States and installed structures throughout the United States. Based on information and belief, this defendant manufactured defective drywall and then sold, directly and indirectly, to certain suppliers within the United States.

10. Defendant Tai'an Taishan Plasterboard Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. (hereinafter "TTP") is a foreign corporation doing business in several States, including but not limited to, Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas and Virginia. Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed

within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including the State of Mississippi. Upon information and belief, Defendant has continuously conducted business with businesses with purchasers within the United States which has resulted in defective drywall being systematically distributed and sold in the United States and installed structures throughout the United States. Based on information and belief, this defendant manufactured defective drywall and then sold, directly and indirectly, to certain suppliers within the United States. Upon information and belief, defective drywall manufactured by this defendant was distributed into the United States bearing markings that state, "Crescent City Gypsum, Inc." or "Crescent City."

11. Defendant TTP is a wholly owned subsidiary of Defendant Taishan.

12. Defendants TTP and Taishan are hereinafter collectively referred to as "Taishan".

13. Upon information and belief, Taishan manufactured and sold defective drywall bearing the following markings: "Made In China," "4feetx12feetx1/2inch," "4feet*12feet*1/2inch," "Made in China Meet or Exceed ASTM C1396 04 Standard," "Made in China Meets or Exceed ASTM C1396 04 Standard," "Made in China Meet or Exceeds ASTM C1396 04 Standard," "Made in China Meets or Exceeds ASTM C1396 04 Standard," "Prowall Drywall, Inc.," "Pro Wall," "Dragon Brand Gypsum," "IMT," "IMG," "International Material Gypsum," "IMG Gypsum," "IMG Chinese Plasterboard," "C&K," "Bedrock Gypsum," "Taian Taishan," "Venture Supply, Inc.," and "Bedrock Gypsum Company," among others.

14. To the extent Taishan is deemed a foreign sovereign entity, Plaintiffs bring claims pursuant to 28 U.S.C. §1605(a)(2), the commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under §1605(a)(5), the tortious act exception. Plaintiffs allege that the claims are based upon defendants' commercial activities carried on in the United States.

The claim also seeks monetary damages against a foreign state for damage to property occurring in the United States, caused by the tortious acts or omissions of that foreign state, or of any official or employee of that foreign state while acting within the scope of his office or employment.

## **GENERAL ALLEGATIONS**

15. Upon information and belief, Defendants' drywall contains gypsum.

16. In "defective drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, sold and/or installed by Defendants herein), the gypsum and other components of the product react, break down, and release sulfur compounds and other noxious gases from the drywall.

17. The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).

18. Exposure to sulfur compounds and the other noxious gases emitted from Defendants' drywall cause personal injury resulting in headaches, nasal infections, eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

19. Although the drywall functions according to is intended purpose as a building component, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

20. As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' homes, structures, personal property, and bodies have been exposed to the harmful effects of Defendants' defective drywall, including the corrosive damage causally connected to the sulfur compounds and other noxious gases emitted by Defendants' defective drywall.

21. Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, sold and/or installed defective drywall, which was unfit for its intended purpose and unreasonably dangerous in its normal use in that the drywall caused corrosion and damage to personal property in Plaintiffs' homes.

22. Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall at issue in this litigation.

23. Defendants recklessly, wantonly, and/or negligently failed to implement procedures for safely formulating, preparing, testing, and otherwise ensuring that the drywall at issue in this litigation was safe for consumers.

24. After learning that their products being sold in the United States was defective, Defendants took no action required under federal law (see Consumer Product Safety Act, 15 U.S.C. § 2051, *et seq*.) to notify their importers, distributors, agents, or consumers of the harmful effects caused by their drywall and initiate a corrective action plan.

25. By failing to take action to notify potential victims or attempt to implement a corrective action plan for the damage their defective drywall products caused, Defendants directly violated the federal CPSA that specifically requires that when a manufacturer has reason to know its product does not meet safety standards, contains a defect, or creates and unreasonable risk of death or injury, it must inform the CPSC. (See 15 U.S.C. 2064(b)).

26. As a direct and proximate result of Defendants' defective drywall and the corrosive and harmful effects of the sulfur compounds and other noxious gases released from these products, Plaintiffs have suffered, and continue to suffer, economic harm.

27. As a direct and proximate result of Defendants' defective drywall and the harmful effects of the sulfur compounds and other noxious gases emitted by their products, the Plaintiffs have suffered, and continue to suffer damages.

28. Plaintiffs' damages include, but are not limited to, cost of inspection; cost and expenses necessary to fully remediate their homes of defective drywall, cost of alternative living arrangements, economic hardship resulting in lower credit ratings leading to higher interest rates on loans and credit cards, lost value or devaluation of their homes and property; and, loss of use and enjoyment of their home and property.

29. As a direct and proximate result of Defendants' defective drywall and the harmful effects of the sulfur compounds and other noxious gases released from these products, Plaintiffs have been exposed to harmful sulfur compounds, and have need for injunctive relief in the form of repair and remediation of their homes, rescission of contracts, the ordering of emergency/ corrective notice, and the ordering of testing and monitoring.

## COUNT I
### NEGLIGENCE

30. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth fully herein.

31. Defendants owed a duty to Plaintiffs to exercise reasonable care in designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall, including a duty to adequately warn of their failure to do the same.

32. Defendants knew or should have known that their wrongful acts or omissions would result in harm and damages in the manner set forth herein.

33. Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

34. Defendants likewise breached their duties to Plaintiffs by failing to warn about the defective nature of the drywall. Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes of Plaintiffs.

35. Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Plaintiffs with the drywall, upon learning it had been sold in an unreasonably dangerous condition.

36. Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages to Plaintiffs.

37. As a direct and proximate cause of Defendants' acts or omissions, Plaintiffs were harmed and have incurred damages as described herein.

## COUNT II
## NEGLIGENCE PER SE

38. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth fully herein.

39. Defendants owed statutory duties to Plaintiffs to exercise reasonable care in designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

40. Defendants breached their statutory duties to the Plaintiffs by failing to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

41. Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other state and local building codes, to Plaintiffs by failing to warn about the defective nature of the drywall. For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTM C 1396/C 1396M-069, and its predecessor(s).

42. Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes and personal property of Plaintiffs.

43. Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm and damages to Plaintiffs.

44. As a direct and proximate cause of Defendants' acts or omissions, Plaintiffs were harmed and have incurred damages as described herein.

## COUNT III
## STRICT LIABILITY

45. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth fully herein.

46. At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

47. The drywall, including that installed in the homes of Plaintiffs was placed by Defendants into the stream of commerce.

48. Defendants knew that the subject drywall would be used without inspection for defects by consumers.

49. Defendants intended that the drywall reach the ultimate consumers, such as Plaintiffs, and it indeed reached Plaintiffs when it was installed in their homes.

50. When installed in Plaintiffs' homes, the drywall was in substantially the same condition as it was in when Defendants manufactured, sold, and/or delivered it.

51. At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

52. The subject drywall was not misused or altered by any third parties.

53. The Defendants' drywall was defectively manufactured, designed, inspected, tested, marketed, distributed, and sold.

54. The design defect was in designing drywall that allowed high levels of sulfur and/or other chemicals to emit through off-gassing.

55. The manufacturing defect was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur that were too high and emitted various sulfide gasses and/or other chemicals through off-gassing.

56. The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a defective condition, as described above.

57. The Defendants' defective manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to Plaintiffs.

58. The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct Plaintiffs of the defective design, inspection, testing, manufacturing, marketing, and selling of the drywall.

59. Plaintiffs were neither aware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Plaintiffs, acting as reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

60. Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Plaintiffs.

61. The benefit, if any, of Plaintiffs using Defendants' defective drywall was greatly outweighed by the risk of harm and danger.

62. The defects in the drywall, as well as Defendants' failure to adequately warn Plaintiffs of the defects rendered the drywall unreasonably dangerous, was the direct and proximate cause of damages, and/or led to the personal injuries of Plaintiffs.

## COUNT IV
## BREACH OF EXPRESS AND/OR IMPLIED WARRANTY

63. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

64. Defendants and/or their agents were in privity with Plaintiffs and/or Plaintiffs were foreseeable third-party beneficiaries of any warranty.

65. At the times Defendants installed, utilized, supplied, inspected, sold, and/or installed this drywall for use in the Plaintiffs' homes, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in the Plaintiffs' homes for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

66. Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and

persons coming into contact with said products without substantial change in the condition in which they were sold.

67. The drywall was defective because it was not fit for the uses intended by Defendants; to wit, the installation of the drywall in Plaintiffs' homes was not suitable for use as a building material, because it contained the defects as set forth herein.

68. The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in Plaintiffs' homes as a building material) due to the defects set forth herein.

69. Defendants had reasonable and adequate notice of the Plaintiffs' claims for breach of warranty and failed to cure.

70. As a direct and proximate cause of Defendants' breach of warranties, Plaintiffs have incurred harm and damages as described herein.

## COUNT V
## MISSISSIPPI PRODUCTS LIABILITY ACT

71. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

72. In addition to any and all damages, attorneys' fees and other remedies made available to Plaintiffs under the warranty of fitness and/or warranty against defects, the Manufacturing Defendants are liable to Plaintiffs under the Mississippi Products Liability Act, ("MPLA"), Miss. Code Ann. §11-1-63 *et seq*.

73. The Manufacturing Defendants, upon information and belief, expressly warranted that "the gypsum boards manufactured and sold… are guaranteed to be free from defects in materials and workmanship."

74. The Manufacturing Defendants expressly warranted that "the gypsum boards were manufactured in accordance with "ASTM C 1396."

75. The drywall at issue is, in all cases, unreasonably dangerous by virtue of the unreasonable off-gassing and/or emission of sulfur compounds and/or other corrosives, toxins and/or irritants, which do not in any way contribute to or enhance the utility of the drywall, yet pose a risk to the wiring, plumbing, appliances, personal property, overall economic value of the property and financial security of the owner, and/or the health of the residents of the property.

76. At all times pertinent and material hereto, Manufacturing Defendants (and/or Distributor Defendants who may be considered "manufacturers" under the MPLA) knew that their drywall was unreasonably dangerous and/or defective as set forth herein.

77. In the alternative, Manufacturing Defendants should have, at all times pertinent and material hereto, known of the unreasonably dangerous and/or defective characteristics and/or conditions, had the reasonably employed then-existing scientific and/or technical knowledge, reasonable testing, and/or other reasonable and then-accepted methods of quality assurance and/or quality control.

78. Defendants' drywall is unreasonably dangerous in composition or construction in that, at the time it left Defendants' control, it deviated in a material way from Defendant's own specification or performance standards.

79. In addition, and in the alternative, defendants' drywall is unreasonably dangerous in design, in that, at the time the drywall left Defendant's control, there existed an alternative design for the product that was capable of preventing Plaintiffs' damage, and the likelihood of causing Plaintiffs' damage and the gravity of that harm outweighed the burden (if any) on the Defendant in adopting such alternative design and the adverse effect (if any) on the utility of the drywall.

80. In addition, or in the alternative, Defendants' drywall is unreasonably dangerous in that it fails to conform to an express warranty about the product which induced the use of the product and caused damage to Plaintiffs to the extent that the warranty was untrue.

81. In addition, or in the alternative, Defendants' drywall is unreasonably dangerous due to an inadequate warning, in that, at the time the drywall left Defendant's control, the drywall possessed a characteristic that might cause damage and yet Defendant failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to users and/or handlers of the drywall.

82. Defendants are therefore liable to Plaintiffs for all damages reasonable in the premises.

## COUNT VI
## PRIVATE NUISANCE

83. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

84. The Defendants' tortious or wrongful acts or omissions have caused sulfide gas and/or other chemical leaching into Plaintiffs' homes which has unreasonably interfered, and continues to interfere, with the Plaintiffs' use and enjoyment of their properties and caused them harm and damage as discussed herein.

85. Defendants' interference has impaired the rights of Plaintiffs' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

86. Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

87. The interference with Plaintiffs' use of their property caused by Defendants is substantial and is ongoing.

88. Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs damages, injuries, harm, loss, and increased risk of harm, which they suffered and will continue to suffer.

89. As a direct and proximate cause of Defendants' creation of a private nuisance, Plaintiffs have incurred harm and damages as described herein.

## COUNT VII
## NEGLIGENT DISCHARGE OF A CORROSIVE SUBSTANCE

90. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

91. Defendants had actual or constructive knowledge of the extremely corrosive and dangerous propensities of the drywall at issue in this litigation.

92. Notwithstanding their actual or constructive knowledge of the corrosive and dangerous propensities of the drywall, defendants nevertheless designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, installed, or sold the drywall for use in the homes or other structures owned by Plaintiffs.

93. By causing the sale, distribution, delivery, and/or supply of the drywall under these circumstances, Defendants breached their duty to exercise reasonable care and created a foreseeable zone of risk of injury to Plaintiffs.

94. Defendants likewise breached their duties to Plaintiffs by failing to warn about the corrosive and dangerous propensities of the drywall. Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property of Plaintiffs.

95. Plaintiffs have suffered injuries by virtue of their exposure to the defective drywall at issue in this litigation. Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm and damages to Plaintiffs.

96. As a direct and proximate result of Defendants' acts and omissions, Plaintiffs were harmed and have incurred damages as described herein. The injuries sustained by Plaintiffs are within the foreseeable zone of risk created by Defendants.

## COUNT VIII
## UNJUST ENRICHMENT

97. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

98. Defendants received money as a result of Plaintiffs' purchase of Defendants' defective drywall, or purchase of homes containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs.

99. Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs.

100. Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

## COUNT IX
## VIOLATION OF MISSISSIPPI CONSUMER PROTECTION ACT

101. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

102. This is an action for relief under the Miss. Code Ann. § 75-24-1, et seq. (Mississippi Consumer Protection Act).

103. The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients,

standards and quality of defective drywall constitute violation of the provisions of the Mississippi Consumer Protection Act.

104. Plaintiffs have suffered actual damages as a result of Defendants' violation of this Consumer Protection Act and are entitled to relief.

105. As a direct and proximate cause of Defendants' violations of the Mississippi Consumer Protection Act, Plaintiffs have incurred harm and damages as described herein.

## COUNT X
## EQUITABLE AND INJUNCTIVE RELIEF

106. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

107. Plaintiffs are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

108. Plaintiffs will suffer irreparable harm if the Court does not render the injunctive relief as set forth herein, and if Defendants are not ordered to recall, buy back, rescind, and/or repair the homes and structures owned by Plaintiffs.

109. Plaintiffs, demand injunctive and equitable relief and further, that Defendants be ordered to: (1) to remediate, repair and/or replace the drywall in the homes and structures upon proof by the Defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the general public that there is no defect in, or danger associated with the drywall; (3) institute, at their own cost, a public awareness campaign to alert the general public of the defect and dangers associated with the drywall.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues so triable as a matter of right.

**PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand upon Defendants jointly and severally for:

a. Compensatory, statutory, and/or punitive damages as allowed by law;

b. Pre and post-judgment interest as allowed by law;

c. Injunctive relief;

d. An award of attorney's fees as allowed by law;

e. An award of taxable costs; and

f. Any and all such further relief as this Court deems just and proper.

s/ *James V. Doyle, Jr.*

James V. Doyle, Jr. (MSB #100727)
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiffs*

Dated: November 9, 2020.